UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 09 B 17582 |
| | ) | |
| NACHSHON DRAIMAN, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |
| RICHARD M. FOGEL, not individually but solely as Chapter 7 Trustee for the Estate of Nachshon Draiman, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RONALD SHABAT; SHABAT & ASSOC., INC.; DAN SHABAT; DAN'S HEALTHCARE MANAGEMENT, LLC; SHABAT INVESTMENTS, LLC; PHARMORE DRUGS, LLC; SFMA, INC.; and LCF ASSOCIATES, | ) ) ) ) ) ) ) | Adv. No. 12 A 00799 |
| | ) | |
| Defendants. | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

This matter comes before the court on the Motion To Dismiss Adversary Complaint (the "Motion") [Docket No. 10] of defendants, Ronald Shabat, Shabat & Associates, Inc., Dan Shabat, Dan's Healthcare Management, LLC, Shabat Investments, LLC, Pharmore Drugs, LLC, SFMA, Inc., and LCF Associates (collectively, the "Defendants") wherein Defendants seek to dismiss the adversary complaint (the "Complaint") [Docket No. 1] filed by Plaintiff, Richard M. Fogel, as Chapter 7 Trustee ("Fogel" or the "Trustee") of the Estate of Nachshon Draiman (the "Debtor"). The Complaint alleges causes of action under sections 547 and 548 of the Bankruptcy Code and various provisions of the Illinois Uniform Fraudulent Transfer Act.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the

United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding to avoid and recover fraudulent conveyances arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H). A proceeding to avoid and recover preferences arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(F); *KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*, No. 08-bk-10095, Adv. No. 10-ap-00824, 2012 WL 4867409 (Bankr. N.D. Ill. Oct. 12, 2012) (Barnes, J.); *Direct Response Media, Inc. v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 646 (Bankr. D. Del. 2012). A motion to avoid and recover a fraudulent conveyance under sections 544(b), 548, and 550 of the Bankruptcy Code arises in a case under title 11 and is also specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H); *Kimball Hill, Inc.*, No. 08-bk-10095, Adv. No. 10-ap-00824; *DBSI, Inc. v. Swenson (In re DBSI, Inc.)*, 466 B.R. 664, 665–66 (Bankr. D. Del. 2012).

## PROCEDURAL HISTORY

In considering the Motion, the court has considered the arguments of the parties at the July 18, 2012 and October 3, 2012 hearings (the "Hearings"), and has reviewed and considered the Motion itself, any exhibits submitted in conjunction therewith, as well as:

(1) The Defendants' Memorandum of Law in Support of their Motion To Dismiss Adversary Complaint [Docket No. 11];

(2) The Plaintiff's Response in Opposition to Defendant's Motion To Dismiss Adversary Complaint on Statute of Limitations Issue [Docket No. 20]; and

(3) The Defendants' Reply Memorandum of Law in Support of Their Motion To Dismiss Adversary Complaint [Docket No. 21].

Though the foregoing items together do not constitute an exhaustive list of the filings in the above-captioned adversary proceeding, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146 at *2 (N.D. Ill. March 8, 1993); *In re Fin. Partners*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

## BACKGROUND

While the Motion presents a number of separate grounds for dismissal of the Complaint, the parties requested an initial ruling from the court on just one ground: Whether dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted is appropriate, given the timing of the claims for preferential and/or fraudulent transfers and the statute of limitations contained in section 546(a)(1) of the Bankruptcy Code.

On a motion to dismiss, all well pleaded facts alleged in the complaint are assumed to be true for purposes of the motion, and all reasonable inferences are drawn in the plaintiff's favor. *See, e.g., Cole v. Milwaukee Area Technical College District*, 634 F.3d 901, 903 (7th Cir. 2011). Here, the only facts alleged in the Complaint that are relevant to the subject statute of limitations issue are as follows:

(1)  The Debtor commenced the above-captioned bankruptcy case (the "Case") on May 14, 2009.

(2)  On May 13, 2011, the Case was converted from a case under chapter 11 of the Bankruptcy Code to a case under chapter 7 of the Bankruptcy Code.

(3)  That same day, Richard Fogel was appointed as interim chapter 7 trustee.

(4)  On June 30, 2011, a meeting of creditors under section 341 of the Bankruptcy Code took place. No permanent trustee was elected at that meeting.

## DISCUSSION

The matter before the court is limited to whether the commencement of the instant adversary proceeding on May 11, 2102 is timely. The Trustee contends that the Complaint is timely; the Defendants contend that it is not.

In order to understand the crux of the parties' disagreement, it is first necessary to understand the three Bankruptcy Code sections implicated thereby.

Section 701, entitled "Interim trustee," provides that the United States Trustee shall appoint an interim trustee promptly after the order for relief under chapter 7. 11 U.S.C. § 701(a). As the above-stated facts make clear, that is just what happened in this case. Fogel was appointed as interim trustee on May 13, 2011, the date the case was converted to chapter 7 and also, pursuant to 11 U.S.C. § 348(a), the date of the order for relief in the chapter 7 case.

Section 702, entitled "Election of trustee," provides that creditors may elect a trustee at the section 341 meeting of creditors. 11 U.S.C. § 702(a)-(c). If no such trustee is elected, however, then pursuant to section 702(d) "the interim trustee shall serve as trustee in the case." 11 U.S.C. § 702(d).

Section 546 provides, in pertinent part, as follows:

(a)  An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of —

(1)  The later of —

(A)  2 years after the entry of the order for relief; or

(B)  1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

3

(2)    The time the case is closed or dismissed.

11 U.S.C. § 546(a).[1]

It is the language of section 546(a)(1)(B) that gives rise to the controversy here. In specific, section 546(a)(1)(B) refers to the "appointment or election" of the first trustee, while at the same time referring only to section 702, not section 701. Section 702, however, contains no concept of appointment of trustees (the term does not in fact occur anywhere in section 702). Instead, section 702 provides that in the absence of the election of a trustee, a trustee previously appointed under section 701 may become the permanent trustee. 11 U.S.C. § 702(d).

Given this, when should the additional year (if any) start under section 546(a)(1)(B) when there is an interim trustee who, by application of section 702(d), becomes the permanent trustee?

The Trustee argues that the additional year begins upon his appointment under section 701. For this reason, he argues that the Complaint is timely as it falls within the additional year following that appointment. As he later became the permanent trustee by operation of section 702(d) of the Bankruptcy Code, he contends that such initial appointment constituted "the appointment or election of the first trustee under section 702" within the meaning of section 546(a)(1)(B). As that additional year, as calculated by the Trustee, began prior to the expiration of the two-year period in section 546(a)(1)(A), the Trustee contends that the conditions of section 546(a)(1)(B) have been satisfied and that he was afforded an additional year to bring the Complaint. The commencement of the adversary proceeding on May 11, 2012—within one year of that initial appointment—is therefore timely per the express terms of section 546(a)(1)(B) as interpreted by the Trustee.

Defendants, on the other hand, contend that the Complaint is not timely as no "election or appointment ... under section 702" occurred within the two-year period set forth in section 546(a)(1)(A). The additional year begins only when section 702 has applied, either through an election or through the operation of section 702(d). It matters not to the Defendants that Fogel was appointed as the interim trustee within the two years of section 546(a)(1)(A), as that appointment was pursuant to 701 and not 702. Defendants argue that the two-year period under section 546(a)(1)(A) expired without triggering section 546(a)(1)(B). Thus by the express terms of section 546(a)(1)(B), no additional year is applicable. No subsequent change of the Trustee from interim trustee under 701 to permanent trustee under 702 can revive it. The commencement of the adversary proceeding on May 11, 2012—more than two years from the entry of the order for relief in the initial case—is therefore untimely per the express terms of section 546(a)(1)(B) as interpreted by the Defendants, as the statute of limitations under section 546(a) expired before the commencement of this adversary proceeding.

Defendants' argument has some merit. In applying a statute, the court looks first to the statutory language. When a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotations and citations omitted). The Third Circuit, construing section 546(a)(1)(B) in *In re American Pad & Paper*

---

[1]    There is no dispute that the "order for relief" referred to in section 546(a)(1)(A) is the original petition date, and not the date of conversion to chapter 7. *See, e.g., In re Allied Digital Technologies Corp.*, 341 B.R. 171, 174 n. 3 (D. Del. 2006).

*Co.*, 478 F.3d 546 (3d Cir. 2007), found the statutory language "amenable to a 'plain language' analysis," *id.* at 557, and the application of section 546(a)(1)(B) to be "straightforward." *Id.* at 551. The "straightforward" analysis may be summarized as follows: Section 546(a)(1)(B) contains a list of statutory provisions under which the appointment or election of a trustee may give rise to an additional one-year period for bringing avoidance actions. Section 701 is not included in that list, however. Thus, under the maxim of *expressio unius est exclusio alterius*, Congress must have intended to omit section 701 and its omission must have meaning.

The first problem with the Third Circuit's rationale is that a strict application of *expressio unius est exclusio alterius* would result in interim trustees never being afforded the additional year under section 546(a)(1)(B), and would create situations such as the case at bar where dalliance by the parties worked to impair the rights intended to be protected. This was made clear by the Delaware district court when it later applied *American Pad & Paper*. *In re Allied Digital Technologies Corp.*, 341 B.R. 171, 177 (D. Del. 2006) (denying the additional year afforded by section 546(a)(1)(B) under facts similar to those at bar).

Such a result, the Trustee contends, "would be absolutely absurd and contrary to the legislative policy ... ." Response, at 13. He urges that this case provides a "blueprint" of the kind of abuse that is possible under a plain meaning construction, *e.g.*, a debtor in possession managing to "hang on" for two years, precluding timely review and filing of avoidance actions by an independent trustee. *See., e.g., Biggs v. Biljo, Inc. (In re Goetz)*, 175 B.R. 743, 746 n. 1 (Bankr .C.D. Cal. 1994) (observing that "In cases where the two-year limitation under new section [546(a)(1)(A)] runs during the period of six or more weeks between conversion of a case and the first opportunity to elect or appoint a permanent trustee under section 702 at the meeting of creditors, the legislative desire to give an independent trustee a year to pursue avoidance actions for the benefit of the estate will be frustrated.").

The Third Circuit considered and rejected arguments such as these in favor of what it perceived to be its interpretive mandate. *American Pad & Paper Co.*, 478 F.3d at 551. But in so doing, the Third Circuit gave short shrift to these realities of their holding, and to a second, more troubling problem, with it.

This second and more troubling problem is that the statute is quite simply not directly amenable to a plain meaning analysis. As the courts in this jurisdiction have made clear, where ambiguity exists within a statute, there can be no plain meaning. *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 648-51 (7th Cir. 2011), *aff'd sub nom. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, --- U.S. ---, 132 S.Ct. 2065 (2012); *In re Tepfer*, 280 B.R. 628, 632 (N.D. Ill. 2002). The court must look beyond the express language of a statute "where that statutory language is ambiguous or where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *United States v. Real Estate Known as 916 Douglas Ave.*, 903 F.2d 490, 492 (7th Cir. 1990), *cert. denied sub nom. Born v. United States*, 498 U.S. 1126 (1991).[2]

There is no question that the parties' dispute has highlighted an ambiguity in the wording of section 546(a)(1)(B). The use of the term "appointment" in section 546(a)(1)(B) creates ambiguity in

---

[2] For similar reasons, it should be noted *expressio unius est exclusio alterius* is not an interpretive mandate. As noted by the Supreme Court, "the canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping ...." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).

the reading of section 546(a)(1) as it interacts with section 702. Section 702 makes reference only to elections and not appointments.

There is clearly ambiguity here.

The court could, of course, dismiss the ambiguity as inartful drafting and conclude that what was intended was the election alone under section 702. Such is the result of *American Pad & Paper*, whether or not the panel there was willing to admit that ambiguity existed. *See also Allied Digital Technologies Corp.*, 341 B.R. at 177 (applying *American Pad & Paper* without heed to the results). In the face of ambiguity, however, as noted above, the court must look further.

Historical analysis of section 546 reveals that it could not possibly be the case that Congress intended appointment to have no meaning in reference to section 702. As originally drafted in 1978, section 546 always contained the concept of appointment in reference to section 702, but did not contain the concept of election. Congress clearly always intended appointment to have meaning in reference to section 702.[3]

The court also considers the nature of section 546(a)(1)–to provide a limitation on time periods within which actions may be brought, *i.e.* a statute of limitations. While the purpose of a statute of limitations is to provide a limited window of opportunity for a party to act, narrowly construing such statutes may lead to inequitable results, and courts should use restraint when so doing. *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 466 (7th Cir. 1991) (refusing to recharacterize plaintiffs' claims in such a way as to trigger a shorter statute of limitations for claims Congress clearly intended to preserve).

Here the purpose of Congress was clearly to afford a bankruptcy trustee no less than a year to bring avoidance actions, while at the same time limiting the time period to no more than three years so as to not interfere with the overall prosecution of the bankruptcy case. *See* 140 Cong. Rec. S14750-02 (1994), 1994 WL 564052; *see also In re Luria Steel and Trading Corp.*, 189 B.R. 418, 424 (N.D. Ill. 1995) (discussing the legislative history of the section as originally drafted and as amended in 1994). If section 546(a)(1)(B) did not run from the appointment of an interim trustee whose role became permanent by operation of section 702(d), then the purpose behind limiting section

---

[3]    Of course, the absence of the word "election" created ambiguity. Most courts resolved this ambiguity by engaging in either or both of two artifices: (i) finding that what happens under section 702 constitutes an appointment; and/or (ii) treating the interim trustee's role as lesser than the permanent trustee's role. The former was a deception intended to avoid clear language problem with section 546(a)(1)(B), while the latter is quite simply a fallacy when viewed in light of the express language of the Bankruptcy Code. *See, e.g., Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.)*, 27 F.3d 980, 984 (4th Cir. 1994) (using both techniques); *Styler v. Conoco (In re Peterson Distr., Inc.)*, 176 B.R. 584, 590-91 (Bankr. D. Utah 1994) (same). *But see Avalanche Maritime, Ltd. v. Sunil Parekh, Jr. (In re Parmetex, Inc.)*, 199 F.3d 1029, 1033 (9th Cir. 1999) (finding that pre-1994 statute ran statute from interim trustee's appointment); *Clark Oil & Trading Co. v. Haberbush (In re Sahuaro Petroleum & Asphalt Co.)*, 170 B.R. 689 (C.D. Cal. 1994) (finding that the statute runs from the appointment of an interim trustee). Congress added the term "election" to section 546 in 1994 to address some of this confusion, but in so doing, created an overinclusive type of ambiguity (rather than the previous underinclusive ambiguity), as only section 1104 of the remaining triggering sections in 546 is the only other section to have any concept of an election, though all the subsections are now equally modified by the term election. At that time, Congress also "fixed" a reading of this section that some had argued gave a debtor-in-possession an unlimited time period to bring avoidance actions.

546(a)(1)(B) to the "first trustee" would be lost. An interim trustee could fulfill its duties (which are no different than a permanent trustee's duties, *see* 11 U.S.C. § 701(c), and include therefore the ability to bring avoidance actions) for nearly two years, whereupon if made permanent by operation of section 702(d), that very same trustee would be afforded an additional year to act. That quite simply cannot be Congress's intent here, and would put paid to Congress's amendments in 1994, which sought to clarify that a more limited approach was appropriate.

Further, if this court were to adopt the *American Pad & Paper* approach, the court would be reading section 546(a)(1)(B) in such a way that an interim trustee under section 701 is <u>never</u> afforded the benefit of this statute while an interim trustee, as section 701 is not mentioned. Because, in fact, the vast majority of cases are ones where the interim trustee becomes the permanent trustee by virtue of section 702(d) and because delay in conversion of cases is not uncommon, cases such as the one at bar would multiply. Such a reading also requires the court to ignore the ambiguity in the statute itself. Both the result and the reading are absurd.

One way to avoid the absurd result while nonetheless adhering to *American Pad & Paper* and the way it applied *expressio unius est exclusio alterius* is to engage in an equally absurd exercise in statutory reconstruction, such as was done by the bankruptcy court in *In re Crowe Rope Industries, LLC*, 311 B.R. 313 (Bankr. D. Me. 2004). The bankruptcy court there explained "There is no need to look to § 701 for an appointment under § 546, because § 702 has its own appointment provision. Paragraph (d) of § 702 provides: 'If a trustee is not elected under this section, then the interim trustee shall serve as the trustee in the case.'" *Id.* at 315; *see also Maxway*, 27 F.3d at 984; *Peterson Distr.*, 176 B.R. at 590-91.

The problem with this type of reasoning is that it is entirely fabricated. There is in fact no appointment under section 702(d). In this court's opinion, the *Crowe Rope* court goes through this exercise to preserve the strict application *expressio unius est exclusio alterius*,[4] while at the same time avoiding the negative results of that maxim, where its strict application would cause the trustee's actions to be time-barred. *Id.*

The net result of the *Crowe Rope* approach is that an interim trustee who becomes permanent is actually treated better than a newly elected trustee. Such an interim trustee is afforded all of its time as interim trustee plus, if applicable, an additional year to consider bringing actions under section 546. The newly elected trustee only gets a year. In addition, neither trustee would get the year provided by section 546(a)(1)(B) if the section 341 meeting occurs more than two years after the initial order for relief. *See, e.g., Allied Digital Technologies Corp.*, 341 B.R. at 177.

To create a reading of section 546 that does harm to the intent of Congress solely to preserve a maxim of statutory construction and to benefit creditors under the specific facts at bar (while generally harming creditors whose facts are more traditional), however, would be a travesty and should be avoided, especially where such a reading further complicates an already complicated statute. *Gleischman Sumner Co. v. King, Weise, Edelman & Bazar*, 69 F.3d 799, 801 (7th Cir. 1995) (interpreting arguments made under pre-amendment section 546 to "make things worse"). The court is mindful that it should not attempt to rewrite statutes in order to address abnormal facts. As the old adage states, "bad facts make bad law." *Haig v. Agee*, 453 U.S. 280, 319 (1981) (Brennan, J.,

---

[4] The *Crowe Rope* court did not make reference to the maxim by name, but clearly was governed by it nonetheless.

7

dissenting). There is no clear intent of Congress to treat the two types of trustees differently, or to afford an interim trustee who becomes permanent by operation of section 702(d) more time than a trustee elected under section 702(b) & (c).

There is, however, a better way.

The better approach is to recognize that there are, as the foregoing makes abundantly clear, two types of trustees under section 702, yet both have the same powers and responsibilities. The permanent, elected trustee does not exist prior to its election. If elected within two years from the order for relief, the permanent trustee should be afforded the year in section 546(a)(1)(B), running from the date of its election. The interim trustee, however, does exist prior to the operation of section 702(d). Its appointment predates the operation of section 702(d), and nothing in Congress's drafting evidences an intention to afford such a trustee more time than the elected trustee to consider section 546 claims. If the interim trustee continues to serve pursuant to section 702(d) following the section 341 meeting of creditors, this trustee's year must run, therefore, from the date of its appointment under section 701. There is no other appointment to which section 546(a)(1)(B) could refer in this context.

This reading gives full meaning to all of the terms in section 546(a)(1)(B). It is section 702 that triggers the right, but it is the actual election under section 702(b) & (c) or appointment under section 701 from which the right is timed. This reading is more in line with the history behind section 546(a)(1)(B) noted above, giving appointment the meaning Congress must have always intended. Absent clearer direction from Congress—which it has had ample opportunity to give—this is the best reading of the statute as currently drafted.

The court recognizes that this means that the additional year would run differently for elected versus appointed trustees. But while that may be the case, this also means that each such trustee would be treated the same for the purposes of what time they are afforded in bringing section 546 actions. The interim trustee who becomes permanent would not be treated better than the elected trustee.

The court also recognizes that this places a burden on the interim trustee to act within a year of its appointment (or two years from the order for relief) should a meeting under section 341 have not yet occurred. Further, it means that such an interim trustee must ensure that its additional year is triggered by section 702(d) before bringing an action more than two years following the initial order for relief, and may have to prepare such causes of action before knowing whether it will be retained under section 702(d). Each is a manageable burden. Given that this ruling makes clear to the interim trustee that the clock is potentially ticking from the date of his or her appointment, it would be hoped that this would be managed by the interim trustee acting quickly to preserve the causes of action—a duty possessed equally the interim and permanent trustees.

Last, the court recognizes that the different timing of the additional year may cause creditors to act differently at the meeting of creditors under section 341 if that meeting occurs outside of two years of the initial order for relief. In such instances, the additional year is lost should such creditors elect a permanent trustee. However, the additional year would not be lost if no trustee is elected and if the interim trustee had been appointed within two years of the order for relief. Given that the alternative is for the additional year to be entirely lost, the court believes that imposing this choice upon the creditors is the lesser of two evils.

    For these reasons, the court finds that the intended meaning of section 546(a)(1)(B) is that the additional year, if any, runs from the date an interim trustee begins service under section 701, if that appointment occurs within two years of the order for relief and if that interim trustee becomes the permanent trustee by operation of section 702(d).

## CONCLUSION

    For all of the foregoing reasons, the court concludes that, in the limited respect discussed herein, the Motion is not well taken. The remainder of the Motion remains and will be considered by the court only after further status in this matter. A separate order will be issued, concurrent with this Memorandum Decision.

Dated: November 26, 2012

_____
Hon. Timothy A. Barnes
United States Bankruptcy Judge